# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

SERVPRO INDUSTRIES, INC., )
)
    Plaintiff, )
) No. 3:15-cv-00608
v. ) Judge Trauger
)
SANTORO & SONS ENTERPRISES, INC., )
RICHARD G. SANTORO, and LINDA M. )
SANTORO, )
)
    Defendants. )

## **MEMORANDUM AND ORDER**

### I. BACKGROUND

The plaintiff, Servpro Industries, Inc., a Nevada corporation with its principal place of business in Gallatin, Sumner County, Tennessee, filed its complaint in this action on May 29, 2015, against the defendants, Santoro & Sons Enterprises, Inc., a Florida corporation, and Richard G. Santoro and Linda M. Santoro, Florida citizens, seeking injunctive relief and monetary damages pursuant to the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and claims under the laws of Tennessee and Florida. Specifically, the plaintiff asserted claims for federal trademark infringement, false designation of origin and dilution, common law trademark infringement and unfair competition, and breach of contract. The defendants, Santoro & Sons Enterprises, Inc. and Richard G. Santoro, did not file an answer or otherwise respond to the complaint[1] and subsequently on July 20, 2015, entry of default was entered against them by the Clerk of Court. (Docket Entry No. 17). The defendants were given notice of the entry of default by the Clerk's Office. (Docket Entry No. 22). On August

---

[1] Linda Santoro was purportedly not served with process. (Docket Entry No. 15, at 2 n.1; Docket Entry No. 43 at 2 n.2).

11, 2015, the plaintiff filed a Motion for Preliminary and Permanent Injunction to Be Entered by Default and for Final Judgment as to Certain Claims Against Defendants Santoro & Sons Enterprises, Inc. and Richard G. Santoro (Docket Entry No. 23). After the parties reached an agreement regarding the plaintiff's request for injunctive relief, the court on September 9, 2015, granted the plaintiff's Unopposed Motion for Entry of Consent Preliminary and Permanent Injunction and Final Order of Judgment as to Certain Claims of Plaintiff. (Docket Entry Nos. 29, 32, 34). However, the plaintiff's claim for damages, costs and fees remained unresolved. (Docket Entry No. 29).

Pending before the court is the plaintiff's Motion for Default Judgment on Damages/Fees Against Defendants Santoro & Sons Enterprises, Inc. (Docket Entry No. 42) on the remaining claims,[2] to which the defendants did not respond. The plaintiff seeks a judgment for its fees pursuant to the franchise license agreement and guaranty attached to its complaint. The plaintiff has submitted declarations supporting the amount of damages involving a liquidated debt and attorney's fees incurred in the prosecution of this action.

## II. ANALYSIS

Upon entry of default, only the complaint's well-pleaded allegations relating to liability are taken as true. *In re Family Resorts of Am., Inc.*, 972 F.2d 347, No. 91-4127, 1992 WL 174539, at *4 (6th Cir. July 24, 1992). However, "'[w]here damages are unliquidated a default admits only defendant's liability and the amount of damages must be proved.'" *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (citation omitted); *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874,

---

[2]Upon the retirement of the Honorable Judge William J. Haynes, Jr., this case was reassigned to the undersigned Judge.

878 (S.D. Ohio 2007) ("Once a default is entered against a defendant, that party is deemed to have admitted all of the well pleaded allegations in the complaint, except those relating to damages."). "Proof of damages ordinarily requires an evidentiary hearing in which the defendant may contest the amount, but a hearing is not necessarily required if the moving party submits uncontested, sworn affidavits sufficient to establish the amount of damages." *Broad. Music, Inc. v. Marler*, No. 1:09-CV-193, 2009 WL 3785878, at *5 (E.D. Tenn. Nov. 12, 2009); *see* Fed. R. Civ. P. 55(b)(2) (A district court "*may* conduct hearings . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.") (emphasis added)); *Vesligaj v. Peterson*, 331 F. App'x 351, 354 (6th Cir. 2009) (Rule 55(b)(2), "by its terms, allows but does not require the district court to conduct an evidentiary hearing."). Thus, as the plaintiff only seeks recovery of the unpaid and past-due royalties and fees, along with its attorney's fees and costs, pursuant to the franchise license agreements, the court concludes that an evidentiary hearing is not necessary to determine damages and attorney's fees. *See Disney Enterprises v. Farmer*, 427 F. Supp.2d 807, 814 (E.D. Tenn. 2006) (granting default judgment and permanent injunction and awarding statutory damages and attorney's fees and costs when defendant failed to defend the action, the district court concluded that no valid purpose would be served by requiring an evidentiary hearing as "any such hearing or argument would only serve to increase the Plaintiffs' claim for attorneys' fees and costs.").

Given the entry of default, the allegations in the well-pleaded complaint are accepted as true. Under the franchise license agreements, the defendants were required to comply with all post-termination obligations and to pay royalties and other fees to the plaintiff. (Docket Entry No.

1, at ¶ 21; Docket Entry No. 1-1, Sections 3.1, 3.2, 3.7, 3.8, and 4.1; Docket Entry No. 1-6, Sections 3.3, 3.5, 3.7, and 4.1). Additionally, the defendants are obligated to pay all costs, including attorney's fees, incurred by Servpro in connection with enforcement of the agreements. Section 13.9 of the Palm Harbor/Oldsmar Franchise License Agreement provides:

> In the event that a dispute or an action in law or equity arises between FRANCHISOR and OPERATOR concerning the operation, enforcement, construction or interpretation of this Agreement or the relationship created thereby or for any other reason, FRANCHISOR is entitled to recover its reasonable attorney's fees, court costs and expenses from OPERATOR, whether incurred prior to, in preparation for or in contemplation of the filing or defense of any such proceeding, unless OPERATOR ultimately prevails on all issues.

(Docket Entry No. 1-6, at 36; Docket Entry No. 1, at ¶ 29). Likewise, Section 14.4 of the Countryside/Safety Harbor Franchise License Agreement provides that the plaintiff shall be entitled to fees, costs, and expenses, including attorney's fees and court costs, "incurred in enforcing the provisions of this Agreement or securing damages for its breach[.]" (Docket Entry No. 1-1, Section 14.4).

## A. DAMAGES

As to damages, the plaintiff submits the declaration of its Credit Insurance Compliance Division Manager, H. D. Wheeler. (Docket Entry No. 45). In his declaration, Wheeler attests to the following:

> 3. As a part of my job responsibilities, I have access to and familiarity with financial and reporting records, including royalties, related to Servpro franchises. I have reviewed the records associated with the Countryside/Safety Harbor and Palm Harbor/Oldsmar franchises, now terminated, which were previously operated by Santoro & Sons Enterprises, Inc., with guarantors Richard G. Santoro and Linda Santoro. These records are kept by Servpro in the ordinary course of business.
>
> 4. As of the date of the termination, March 18, 2014, Santoro & Sons Enterprises, Inc., and Richard Santoro owed Servpro the principal amount of $4,412.13 in unpaid and past-due royalties and fees. This principal figure consisted

4

of a balance of $2,278.97 associated with the operation of and pursuant to the Franchise License Agreement governing the Servpro of Countryside/Safety Harbor franchise ($1,570.37 in unpaid royalties and $780.60 for an unpaid product fee) and a balance of $2,133.17 associated with the operation of and pursuant to the Franchise License Agreement governing the Palm Harbor/Oldsmar franchise ($2,041.49 in unpaid royalties and $91.67 for an unpaid software fee). I have had calculated interest on that amount from and after March 18, 2014, at what I understand is the Tennessee statutory rate of 5.25% per annum, which adds an additional $687.30 as of March 6, 2017 (182.77 + 231.64 + 231.64 + 41.25), for a total on that figure of $5,099.43. The per diem would be $0.63 ($231.64 ÷365). This does not include the amount of fees and costs incurred by Servpro in connection with this matter.

    5.    When the Santoro Defendants quit the Servpro franchise system, they already had stopped submitting royalty reports and had ceased making payments to Servpro. Based upon our company's experience, reporting by a franchise which is considering or has decided to quit the system is regularly under-reported. Servpro attempted for a considerable amount of time to engage with the Santoro Defendants to seek compliance with the post-termination provisions of the franchise license agreement. Servpro does not have access to information sufficient to provide an answer to what the Santoro Defendant's actual receipts were during the periods leading up to its termination or following while it was engaged in activities in violation of the post-termination obligations. Servpro has elected to proceed based on information previously provided by the former franchisee, rather than attempt to obtain discovery from an unrepresented and uncooperative set of defendants.

(Docket Entry No. 45, at ¶¶ 3-5).

Based upon the undisputed proof, the court concludes that the defendants have violated the Franchise License Agreements governing the Countryside/Safety Harbor and Palm Harbor/Oldsmar franchises and that the plaintiff shall be awarded damages in the amount of $5,099.43 in unpaid and past-due royalties and fees. In addition, the plaintiff shall be awarded prejudgment interest from March 6, 2017 to the date of the entry of this court's judgment at the rate of $0.63 per day.

**B. ATTORNEY'S FEES AND COSTS**

Pursuant to the franchise license agreements, the plaintiff seeks attorney's fees and costs in the amount of $29,235.00. (Docket Entry No. 44, at ¶ 9). The plaintiff argues that the amount of fees charged and time spent in preparing and filing the complaint, successfully obtaining injunctive

relief, and dealing and negotiating with the defendants are reasonable in light of the complexities of a Lanham/franchise termination case in federal court and the high value of obtaining permanent injunctive relief. (Docket Entry No. 43, at 5).

The party seeking an attorneys' fee award pursuant to a statute or contract has two main obligations: (1) to provide the court with "evidence supporting the hours worked and rates claimed" and (2) to demonstrate that the requested fee award is "reasonable." *Building Service Local 47 v. Grandview Raceway*, 46 F.3d 1392, 1402 (6th Cir. 1995); *U.S. Structures v. J.P. Structures*, 130 F.3d 1185, 1193 (6th Cir. 1997).

In support of its request for attorney's fees, the plaintiff submits the declaration (Docket Entry No. 44, at ¶2) of its counsel Robb S. Harvey, a partner with the law firm of Waller, Lansden, Dortch & Davis, LLP ("Waller"). In his declaration, Harvey states that

> Throughout this litigation, I made decisions to delegate work to an attorney whose billing rate is lower than my own. Where I could do so, it saved the client money in my judgment. Had I been required to perform all the tasks reflected on the exhibited billing statements, the total cost to the client would have been higher. In my judgment, that would not have been appropriate, and Waller attempted to keep the costs down.
>
> In my judgment, Servpro and we took appropriate steps to resolve the dispute, and our being able to obtain an injunction order by agreement also kept the overall cost down.

(Docket Entry No. 44, at ¶¶ 7-8).

Attached to Harvey's declaration are the invoices in connection with Waller's work on this matter. (Docket Entry No. 44-1). In support of the position that the hourly rates and hours expended were reasonable, Harvey submitted detailed information regarding who worked on the case, the amount each person worked on the case, and each individual's billing rate. According to the invoices, there were three attorneys at Waller who worked on this case, each with a different billing

rate. Harvey's hourly rate ranged from $480 in 2015 to $490 in 2016. (Docket No. 44-1). Wells T. Hoffman's hourly rate ranged from $250 in 2015 to $280 in 2016. *Id.* Kevin T. Elkins's hourly rate was $215. *Id*. at 37. Harvey, over the two-year period, performed 42.2 hours of work, and Hoffman performed 50.2 hours of work. (Docket Entry No. 44-1). Elkins performed 4 hours of work in October 2016. *Id*. at 37. The invoices reflect that Waller worked 96.4 hours on this litigation and charged a total of $29,235 in fees, which comes out to a $303.27 hourly rate.[3,4]

In his declaration, Harvey refers to excerpts from the 2014 National Law Journal (NLJ) Billing Survey, which indicates that the hourly billing rate at a comparable law firm (Bradley Arant) is $325 to $605 for partners and $200 to $340 for associates. (Docket Entry No. 44, at ¶ 3 (citing *Tanco v. Haslam*, No. 3:13-cv-01159 (M.D. Tenn.) (Docket Entry No. 106, at 14; Docket Entry No. 132, at 5)). Given the NLJ information, Harvey's declaration, and the court's own familiarity with the Waller firm, this average hourly rate is reasonable. Further, based upon Harvey's declaration and invoices in support, the court also finds the number of hours expended in the prosecution of this action reasonable.

### III. CONCLUSION

Accordingly, for the reasons stated, the plaintiff's Motion for Default Judgment on Damages/Fees Against Defendants Santoro & Sons Enterprises, Inc. (Docket Entry No. 42) is **GRANTED**, and the court **AWARDS** the plaintiff damages in the amount of $5,099.43 and

---

[3]Harvey attests that the invoices "do not reflect all time that was invested in working on this dispute, some of which time is shown as having been written off and additional time in which was not recorded on these billing records and was not charged to the client." (Docket Entry No. 44, at ¶ 3). The invoices reflect that Waller did not bill its client $4,716 in fees ($3,542.33 for Harvey and $1,173.67 for Hoffman).

[4]The invoices reflect that Waller incurred costs in the amount of $1,955.81.

prejudgment interest from March 6, 2017 to the date of the entry of this court's judgment at the rate of $0.63 per day and $29,235 in attorney's fees and costs.

This court **ORDERS, ADJUDGES AND DECREES** that all writs and other process necessary to enforce the judgment contained herein shall issue in favor of the plaintiff.

This being the final Order, the Clerk is instructed to close this case.

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge